Welch, C. J.
The only question involved in the case is whether the prisoner’s acceptance of the commutation is essential to its validity. Or, to state the question more generally, has the governor of Ohio, under our present constitution and laws, power to commute the sentence of a lunatic, without her consent? We have no hesitation in answering this question in the affirmative.
A commutation is not a conditional pardon; nor is it simply the substitution of one punishment for another. In its legal acceptation, it is a change of punishment from a higher to a lower degree, in the scale of crimes ,and penalties fixed by the law, and is presumed, therefore, to be beneficial to the convict. It is an act of executive clemency, equally as a pardon, only in a less degree.
In England, the pardoning power could be exercised by parliament; and a pardon granted by parliament needed not to be accepted by the culprit in order to render it ef *208 feetive. In the absence of constitutional provision, it se'ems, therefore, t'o be a power belonging to the legislative department. By our constitution, this power is vested exclusively in the governor of the state. Whether, under this constitutional provision, and in the absence of any legislation on the subject, a pardon or commutation of punishment, by the governor, would be operative without the assent or acceptance of the convict, is a question not involved in the present case. This constitutional provision vests the whole pardoning power in the governor, and I see now no good reason why the power should not be held to be as effective and plenary in his hands, as it would have been if left to the legislative department. But we need not, and do not, now undertake to decide this question.
The case is amply provided for by statute. ’ The fifty-eighth section of the act of April 7, 1856 (S. & C. 850), which was in force at the date of the commutation, provides : “ That if any person, after being convicted of any crime or misdemeanor, and before the execution, in whole or in part, of the sentence of the court, becomes insane, it shall be the duty of the governor of the state to inquire into the facts, and he may pardon such lunatic, or commute, or suspend, for the time being, the execution, in such manner and for such period as bo may think proper.”
Here is absolute power given the governor to commute the punishment of a lunatic, uncoupled with any condition requiring assent. A lunatic is incapable of giving assent, and the power to pardon or commute his punishment is necessarily a power to do so without the consent of the lunatic. The legislature has plenary power to prescribe the punishment of crimes and offenses, and can exercise that power without consulting the offender. Where the punishment of a lunatic is commuted under this statute, the substituted punishment is a punishment prescribed by law, equally as if it had been the only punishment provided for the offense, or the punishment inflicted by the sentence of the court. In substance and effect, the law declares that any person convicted of murder in the first degree, and *209 afterward becoming a lunatic, shall be imprisoned in the penitentiary for life, if the governor, by his warrant, shall substitute that punishment for the death penalty. As soon as the commutation is made, the new penalty becomes the. one fixed by law, and the original penalty can not be restored. The words “ for the time being,” in the section of the statute referred to, do not relate to commutations or pardons, but merely to cases where the execution is suspended.
The judgment must, be reversed, and the prisoner remanded to the warden of the penitentiary.